IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| **JEFFREY WONSER,**<br>　　　　*Appellant,*<br>v.<br>**CHARLES L. NORMAN,** *et al.*,<br>　　　　*Appellees.* | Case No.: 25-3509 |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
JUDGE SARAH D. MORRISON, DISTRICT JUDGE
NO. 2:24-CV-02160

**BRIEF OF APPELLANT JEFFREY WONSER**

Brian D. Bardwell (0098423)
Speech Law, LLC
4403 Saint Clair Ave, Suite 400
Cleveland, OH 44103-1125
216-912-2195 Phone/Fax
brian.bardwell@speech.law
*Attorney for Appellant Jeffrey Wonser*

**CORPORATE DISCLOSURE STATEMENT**

TABLE OF CONTENTS

Corporate Disclosure Statement ................................................................................... ii
Table of Authorities ...................................................................................................... iv
Jurisdictional Statement ................................................................................................1
Issues Presented .............................................................................................................1
Statement of the Case.....................................................................................................2
Summary of Argument ..................................................................................................4
Standard of Review ........................................................................................................5
Law & Argument ............................................................................................................6
   I.   Because Mr. Wonser's statute of limitations had not lapsed, the District Court erred in granting Defendants judgment on the pleadings................................................................6
      A.   Mr. Wonser's two-year statute of limitations had not lapsed because he alleged a one-month-old violation of his First Amendment rights. ...........................................6
      B.   Mr. Wonser's statute of limitations had not lapsed because he alleged a continuing violation of his First Amendment right to receive speech. ......................................10
          1.   Because Mr. Wonser alleged a longstanding and demonstrable policy of discrimination, Mr. Wonser's complaint alleged a continuing violation of his First Amendment right to free speech..............................................................10
          2.   Because Mr. Wonser alleged a longstanding and demonstrable policy of discrimination, Mr. Wonser's complaint alleged a continuing violation of his First Amendment right to *receive* speech. ......................................................13
Conclusion ...................................................................................................................15
Certificate of Compliance .............................................................................................16
Certificate of Service ....................................................................................................16
Addendum....................................................................................................................16

## TABLE OF AUTHORITIES

No table of authorities entries found.
**No table of authorities entries found.**

**JURISDICTIONAL STATEMENT**

There are no jurisdictional impediments to the Court hearing this case:

a) The district court had subject-matter jurisdiction to hear Mr. Wonser's complaint under 28 U.S.C. § 1331 because its allegations of First Amendment violations, raised a federal question.[1]

b) This court has subject-matter jurisdiction under 28 U.S.C. § 1291 because the district court entered a final, appealable order on June 11, 2025.[2]

c) Because Mr. Wonser filed his notice of appeal from that order on July 10, 2025—within the 30-day limit established under Fed.R.App.P. 4(a)(1)(A)—Mr. Wonser timely appealed.

d) The order appealed from disposed of all claims against all Defendants.

**ISSUES PRESENTED**

1. An Ohio plaintiff must bring claims under Section 1983 within two years of their accrual. Mr. Wonser filed a complaint on May 3, 2024, alleging a violation of his First Amendment in April 2024. Should the district court have dismissed the complaint for exceeding the statute of limitations?

2. A plaintiff with no timely claims of his own can nonetheless prosecute a "continuing violation" he is part of a class of people who defendants discriminate against as a matter of policy. Mr. Wonser alleged that Defendants were engaged in partisan viewpoint-based discrimination, that he personally was among those targeted by that discrimination, and that that discrimination is a result of Defendants longstanding, official practices. Has Mr. Wonser alleged a viable continuing violation?

3. Because federal courts have discarded the "theory of the pleadings," a complaint need only contain direct or inferential allegations of the material elements of some viable legal theory. Mr. Wonser's complaint alleged that dozens of other drivers had messages to communicate but Defendants were preventing him from receiving. Should the Court have refused to consider Mr. Wonser's right-to-receive argument because he didn't use the words "right to receive speech" in his Complaint?

---

[1] ECF #1, ¶¶ 119–147, PageID# 14–16

[2] ECF #38, PageID #2496.

### STATEMENT OF THE CASE

On March 10, 2022, Appellant Jeffrey Wonser applied for a vanity license plate through the Ohio Bureau of Motor Vehicles website. He asked for a license plate reading "F46 LGB," a combination of letters and numbers that has no clear meaning.[3] Some people view the 4 and 6 as stand-ins for the letters A and G, rendering the message as "FAG LGB," an attempt to reclaim a derogatory slur for lesbians, gays and bisexuals.[4] Others read it as code for "Fuck 46, Let's Go Brandon," a harshly phrased condemnation of the Biden Administration.[5]

Apparently based on its adoption of that second interpretation, Defendants denied Mr. Wonser's application, saying it ran afoul of their "Special Screening Guidelines," a set of rules for deciding which messages it would and would not allow on vanity plates.[6] Mr. Wonser appealed, but Defendants rejected his appeal.[7] In the course of the two years that followed, Mr. Wonser repeatedly sought to apply for various other messages for a vanity license plate, none of which they have approved.[8]

After conducting extensive research into their vanity-plate program, Mr. Wonser realized that Defendants had a longstanding practice of censoring license plates on various grounds: sometimes based on partisan preferences,[9] sometimes based on other viewpoints,[10] and

---

[3] Complaint, ¶ 81–83, ECF #1, PageID #11.

[4] Complaint, ¶ 84, ECF #1, PageID #11.

[5] Complaint, ¶ 85, ECF #1, PageID #11.

[6] Complaint, ¶ 97, ECF #1, PageID # 13.

[7] Complaint, ¶¶ 93–103, ECF #1, PageID # 12–13.

[8] Complaint, ¶¶ 111, ECF #1, PageID #14.

[9] Complaint, ¶¶ 73–76, ECF #1, PageID #11.

[10] Complaint, ¶¶ 77–79, ECF #1, PageID #11.

sometimes with no apparent basis whatsoever.[11] Seeking to bring their practices into alignment with the First Amendment for his own benefit and to protect the rights of other drivers around the state, Mr. Wonser filed suit on May 3, 2024, alleging that Defendants had violated his rights by denying his applications from March 2022 forward, and by denying the dozens of specifically identified applications from other drivers.[12]

Defendants answered, admitting that they had rejected the March 2022 application, denying for want of knowledge that they had rejected any applications thereafter, and admitting that they had rejected many of the other applications that Mr. Wonser had complained of.[13] Thereafter, Defendants moved for judgment on the pleadings, arguing that Mr. Wonser's claims were stale and that their censorship guidelines pose no First Amendment issues.[14] Mr. Wonser opposed that motion, noting that he had alleged an injury within the two-year limitations window; that the continuing-violations doctrine permitted him to challenge the Special Screening Guidelines themselves, regardless of when last they injured him specifically; and that he had a timely claim against Defendants based on Guidelines' violation of his right to receive speech.[15]

The Court granted Defendants judgment on the pleadings.[16] Its order never addressed the merits, disposing of the case based exclusively on Defendants' statute-of-limitations argument. It concluded that Mr. Wonser's first injury was outside the limitation period and that Defendants'

---

[11] Complaint, ¶¶ 61–70, ECF #1, PageID # 10.

[12] Complaint, ECF #1.

[13] Answer, ¶¶ 87, 111, 38–80, ECF #4, PageID #7–14.

[14] Mot. for J. on the Pleadings, ECF #9.

[15] Br. in Opp. to Mot. for J. on the Pleadings, ECF #24; Reply in Support of Mot. for Prelim. Inj., ECF #23, PageID #2405–09.

[16] Order, ECF #38.

subsequent violations of his rights were not actionable. It refused to address his right-to-receive argument, saying that he never alleged it in the Complaint.[17]

Mr. Wonser timely appealed.[18]

### SUMMARY OF ARGUMENT

As laid out below, Mr. Wonser is entitled to reversal for three independent reasons.

First, the Court should reverse because the district court invoked Section 1983's two-year statute of limitations to dispose of a claim based on a First Amendment violation that had occurred less than a month before Mr. Wonser filed his Complaint. The district court relied on its conclusion that Mr. Wonser's most recent injury was merely a repetition of one that had occurred more than two years earlier, but that conclusion was premised on inferences it had drawn *against* Mr. Wonser as the non-moving party, and it ran afoul of repeated reminders from this Court and the Supreme Court that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

Second, the Court should reverse because the district court misapplied binding precedents articulating the "continuing violation" doctrine. This Court and the Supreme Court allow plaintiffs injured by discriminatory policies to challenge those policies at any time within the limitations window for the most recent application of that policy—even if that policy was not enforced against the plaintiff himself within the limitations window. While no one disputes that the Complaint sets forth those allegations, the district court said *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516 (6th Cir. 1997) foreclosed any relief for Mr. Wonser on that theory. But the district court misapplied the standards laid out in Kuhnle Bros., lifting a fact that this Court

---

[17] Order, ECF #38, PageID #2493.

[18] Notice of App., ECF #40.

treated as *sufficient* to satisfy one element and then treating that circumstance as a *necessary* element.

Third, the Court should reverse because the district court's order granting judgment on the pleadings refused to let Mr. Wonser proceed with his argument that the Guidelines violated his right to receive speech. Although his Complaint sets forth all the allegations necessary to succeed on such a theory, the district court explicitly discarded this argument without analyzing it because he had not alleged it in his complaint. But the "theory of the pleadings" is long dead, and Mr. Wonser is no longer required to explicitly allege every theory for relief; he is merely required to allege—directly or inferentially—facts that would support "a recovery under some viable legal theory." *Bluegrass Ctr., LLC v. U.S. Intec, Inc.*, 49 F. App'x 25, 30 (6th Cir. 2002).

Correcting any one of these errors would revive Mr. Wonser's case, but the Court should reverse on all three, permitting him to move forward on whichever theory best clarifies the factual questions that the district court will need to resolve before entering judgment on the merits.

## STANDARD OF REVIEW

This Court reviews a dismissal of a complaint on a Rule 12(c) motion de novo, affirming "only where, construing the complaint in the light most favorable to the plaintiff, and accepting all of its factual allegations as true, the plaintiff can prove no set of facts in support of the claims that would entitle him to relief." *Smith v. City of Salem*, 378 F.3d 566, 570 (6th Cir. 2004).

## LAW & ARGUMENT

**I.   Because Mr. Wonser's statute of limitations had not lapsed, the District Court erred in granting Defendants judgment on the pleadings.**

    **A.   Mr. Wonser's two-year statute of limitations had not lapsed because he alleged a one-month-old violation of his First Amendment rights.**

"For civil rights claims brought in Ohio, the two-year general statute of limitations contained in Ohio Revised Code § 2305.10 applies." *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

For instance, in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014), a filmmaker's daughter sued a movie studio for copyright infringement over its distribution of *Raging Bull*. The district court and the Ninth Circuit rejected the claims, holding that she was barred from raising claims in 2009 that had first accrued to her in 1991. But the Supreme Court reversed, noting that the separate-accrual rule that governs most claims required the district court to treat not just the first infringement as an accrual event, but rather every infringing act: "When a defendant commits successive violations, the statute of limitations runs separately from each violation. Each wrong gives rise to a discrete claim that accrues at the time the wrong occurs. In short, each infringing act starts a new limitations period." Applying this standard practice protects both the plaintiff and defendant, the court reasoned, as the plaintiff can recover for injuries within the statute of limitations, while "the infringer is insulated from liability for earlier infringements of the same work." *Petrella* at 671.

Here, the Complaint alleged at least two discrete violations of his First Amendment right to participate in their vanity-plate program:

1. It alleges Defendants Norman and Stickrath violated his rights when they rejected his appeal of the denial of a license plate reading "F46 LGB." Complaint, ¶¶ 81–94. Defendants have shown—and Mr. Wonser does not dispute—that it occurred in March 2022.

2. It alleges Defendants Norman and Wilson violated his rights when they rejected a separate attempt to register a "chosen message." Complaint, ¶ 111. Although the complaint does not explicitly identify the date of that denial, the district court acknowledged the undisputed fact that Defendants were still denying Mr. Wonser's applications as late as April 2024.[19]

Under *Petrella*, then, it becomes clear that Mr. Wonser had at least two separate claims with two separate accrual dates: one that accrued in March 2022, and another that accrued in April 2024—one month before Mr. Wonser filed suit. Still, the district court granted Defendants judgment on the pleadings, holding that that one-month-old claim was stale because "subsequent requests for the same license plate in July 2022 and April 2024 were not new deprivations."[20] But the premise of that holding—that all his subsequent applications were for the same license plate that had been rejected in March 2022—is not alleged in his Complaint, nor is it even alleged in Defendants' Answer or Motion for Judgment on the Pleadings. The only way the district court could reach that conclusion, then, was to set aside the possibility that Mr. Wonser applied for one or more different messages that were also rejected and instead draw the inference that the only application Mr. Wonser made was the one that would bar him from relief.

The district court's holding on this point was therefore reversible error, as both its premise and its conclusion are unsupported. The premise was a clearly impermissible deviation from clearly established standards for deciding Rule 12 motions, where the district court was required to "draw all reasonable inferences in his favor." *Myers v. City of Centerville*, 41 F.4th 746, 753 (6th Cir. 2022). In other words, if it could reasonably be inferred that Mr. Wonser had requested a plate with a message other than the one he had requested earlier in the year, the

---

[19] Order, ECF #38, PageID 2490.

[20] Order, ECF #38, PageID 2494.

district court was required to draw that inference, rather than drawing a fatal inference *against* him as the non-moving party, i.e., that the only application he made was the one that would bar him from relief.[21]

Even if that inference were true, though, the district court still reached an incorrect and unsupported conclusion when it held that Mr. Wonser could not raise any claims based on any denials subsequent to the first one because they were somehow "not new deprivations" of his First Amendment rights[22]

Although they agreed on this conclusion, neither Defendants nor the district court explicitly justified it. Nor is it clear that they could have, as the Supreme Court has repeatedly held that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).[23] For instance, in *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 502 (1968), the defendant in an antitrust action invoked the statute of limitations to defend against a claim that its machinery-leasing policy was anticompetitive, arguing that because it had been enforcing that policy against the plaintiff since 1912, it could not bring suit to collect damages arising from that policy in 1955. But the Second Circuit rejected that argument, and the Supreme Court affirmed, holding that because repeated enforcement of the policy inflicted "accumulating harm" on the plaintiff, its decision not to pursue action decades earlier did not preclude it from pursuing action if the

---

[21] The point is not at all academic. While they are not all documented in his Complaint, Mr. Wonser can represent that had the district court not construed that allegation so narrowly that it required dismissal, he would have been able to support it with evidence of dozens of other rejected applications from December 2022 forward.

[22] Order, ECF #38, PageID #2494.

[23] *See also*, *Davis v. Metro Parks & Recreation Dep't.*, 854 F. App'x 707, 712 (6th Cir. 2021); *Banerjee v. Univ. of Tennessee*, 820 F. App'x 322, 332 (6th Cir. 2020); *Bowerman v. UAW, Loc. No. 12*, 646 F.3d 360, 367 (6th Cir. 2011).

injuries continued to point that it could no longer tolerate: "Although Hanover could have sued in 1912 for the injury then being inflicted, it was equally entitled to sue in 1955."

As this Court summarized when extending the same treatment to repeated enforcement of discriminatory employment policies:

> [A] new cause of action accrued each time the defendant violated the law. The Court reasoned that the defendant should not be allowed to continue its illegal conduct forever because it had not been previously challenged and that plaintiff should not be able to collect for forty years of damages. Similarly, the defendant in this case violated the Equal Pay Act for almost ten years before Gandy sued. The defendant should not be allowed to continue to discriminate because it has been able to do so for ten years, and the plaintiff should not be allowed to collect for damages outside the three-year limitations period.

*Gandy v. Sullivan Cnty.*, 24 F.3d 861, 864–65 (6th Cir. 1994).

The same principle easily maps onto these facts: Defendants established a policy whose enforcement violates the First Amendment, so a new cause of action accrues each time Defendants violate the law by enforcing that policy. Defendants should not be able to continue to violate Mr. Wonser's First Amendment rights forever just because he didn't challenge them the first time, even if that means he cannot collect for injuries more than two years old.

The district court seemed to be teed up to reach just this conclusion, as it acknowledged that each "denial of a requested license plate is a single harm, measurable and independently actionable, triggering the statute of limitations,"[24] which would require it to separately apply the two-year lookback to both the March 2022 denial and the "independently actionable" April 2024 denial. Instead, the district court granted Defendants a permanent license to continue violating Mr. Wonser's right to free speech, holding that because Defendants' first infringement of his

---

[24] Order, ECF #38, PageID #2495.

First Amendment rights had not been challenged, Defendants can never again be challenged, no matter how many times they subject him to the same infringement. But that approach flies in the face of binding precedent from this Court and the Supreme Court, which have long held that statutes of limitations cannot be ignored to bar "claims accruing separately within the limitations period." *Petrella v. Metro-Goldwyn-Mayer*, Inc., 572 U.S. 663, 681 (2014).

Because Mr. Wonser brought suit for the April 2024 violation of his First Amendment rights within a month, the Court should reverse the district court's holding that he failed to satisfy a two-year statute of limitations.

> B. **Mr. Wonser's statute of limitations had not lapsed because he alleged a continuing violation of his First Amendment right to receive speech.**
>
> 1. **Because Mr. Wonser alleged a longstanding and demonstrable policy of discrimination, Mr. Wonser's complaint alleged a continuing violation of his First Amendment right to free speech.**

To establish a "continuing violation" of civil rights, a plaintiff "must establish that some form of intentional discrimination against the class of which plaintiff was a member was the company's standing operating procedure." *Sharpe v. Cureton*, 319 F.3d 259, 268–69 (6th Cir. 2003).

When that is the case, a plaintiff injured by the practice may pursue a continuing-violation claim, even if he himself was not the immediate victim of it within the statute of limitations. For instance, in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), a group of plaintiffs—a prospective renter and two "testers"—brought Fair Housing Act claims against a leasing company alleging that it was steering black renters out of certain neighborhoods. The district court accepted the renter's case as timely but threw out the testers' claims because they were not filed within 180 days of the tests where they were turned away. But the Fourth Circuit and the Supreme Court rejected that holding for failing to account for the continuing-violation

doctrine. Because they brought their claims within the statute of limitations of the last asserted occurrence of *Havens*' discriminatory practices, they were free to continue pressing for a remedy to end that policy and recover damages for being "deprived of the benefits of interracial association"—even after the renter with the timely claims exited the case:

> [A] "continuing violation" of the Fair Housing Act should be treated differently from one discrete act of discrimination. Statutes of limitations such as that contained in § 812(a) are intended to keep stale claims out of the courts. … Where the challenged violation is a continuing one, the staleness concern disappears. Petitioners' wooden application of § 812(a), which ignores the continuing nature of the alleged violation, only undermines the broad remedial intent of Congress embodied in the Act. … Like the Court of Appeals, we therefore conclude that where a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within 180 days of the last asserted occurrence of that practice.

*Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81 (1982).

Under *Havens Realty* and *Sharpe*, then, granting Defendants judgment on the pleadings was still reversible error—even this Court accepts all the errors laid out above. Even if it was acceptable to draw an inference that Mr. Wonser's only new request for a license plate was for the same one he requested in March 2022, and even if the denial of the more recent request for that same plate did not constitute a new accrual event, Mr. Wonser's complaint still alleged a continuing violation because—like in *Sharpe*—it alleged that Defendants were engaged in unlawful discrimination, that the discrimination was targeted at a class of which he was perceived to be a member, and that the discriminatory practice was Defendants' "standard operating procedure," *Sharpe* at 269.

Under those facts, disputes over when Mr. Wonser most recently applied for a plate or what it said become immaterial, because Mr. Wonser is no longer simply challenging a discrete

personal injury, he is challenging "an unlawful practice that continues into the limitations period." *Havens Realty Corp.* at 381.

The district court reached an opposite conclusion, based on its reading of *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516 (6th Cir. 1997). There, a trucking company alleged that a county resolution violated its right to intrastate travel by banning it from a road it needed to access a customer's facilities. The trial court granted summary judgment for the county, holding that the company's Section 1983 claims were time-barred because they were filed more than two years after the resolution passed. But this Court reversed, holding that if the county was violating the company's right to travel, "then each day that the invalid resolution remained in effect, it inflicted 'continuing and accumulating harm.'" In reaching that holding, the Court observed that "Kuhnle suffered a new deprivation of constitutional rights every day that Resolution 91–87 remained in effect, rather than merely suffering additional harm from a prior unconstitutional act," *Kuhnle Bros.* at 522. While the context of the quote makes clear that the Court was treating this fact as *sufficient* to demonstrate the existence of an unlawful practice that continues into the limitations period, the district court went much further, treating it as a necessary element.

But *Havens Realty* rejects that reading, as it permitted plaintiffs with stale claims to challenge the unlawful housing practices on a continuing-violation theory—even though their own claims were stale—because they had established that those practices continued into the limitations period.

Mr. Wonser should have therefore remained free to press his claims based on nothing more than Defendants' ongoing enforcement of the Special Screening Guidelines, assuming he could establish Article III standing, which he premised not only on his own denials, but also on

the Guidelines' infringement on his right to First Amendment right to *receive* information, which are addressed in greater detail below.

Because Mr. Wonser alleged that Defendants continue to enforce a discriminatory policy against him and others in his class, he alleged a continuing injury that may be raised as a Section 1983 claim at any time within two years of the last asserted occurrence of that discrimination. Because he alleged that Defendants were continuing to enforce the Guidelines up until the time he filed his Complaint, his claims therefore remained timely.

> **2.  Because Mr. Wonser alleged a longstanding and demonstrable policy of discrimination, Mr. Wonser's complaint alleged a continuing violation of his First Amendment right to *receive* speech.**

"Under federal notice pleading standards, pleadings must contain either direct or inferential allegations with respect to all the material elements to sustain a recovery under some viable legal theory." *Bluegrass Ctr., LLC v. U.S. Intec, Inc.*, 49 F. App'x 25, 30 (6th Cir. 2002).

In *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11–12 (2014), two police officers sued the City, alleging it had violated the Fourteenth Amendment by firing them for blowing the whistle on crimes among the board of aldermen. Because they pleaded a violation of the Fourteenth Amendment, the Fifth Circuit affirmed summary judgment for the city, holding that a litigant seeking to vindicate a violation of constitutional rights under color of state law was required to invoke 42 U.S.C. 1983 explicitly. But the Supreme Court summarily reversed, holding that an "imperfect statement of the legal theory supporting the claim asserted" is not grounds to dispose of a case at the pleading stage:

> Petitioners stated simply, concisely, and directly events that, they alleged, entitled them to damages from the city. Having informed the city of the factual basis for their complaint, they were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim.

*Johnson* only reaffirmed a rule that this Court had already been applying—even more broadly—for decades. In *Colonial Refrigerated Transp., Inc. v. Worsham*, 705 F.2d 821, 825 (6th Cir. 1983), for instance, a trucking company sought reimbursement for damages it had paid in personal-injury claims, relying on an indemnity clause in its lease agreement with the defendant. The district granted judgment for the plaintiffs, holding instead that defendant was liable under an implied-indemnification theory. The defendant appealed, but the Sixth Circuit affirmed, holding that if "the complaint alleged facts that would support a claim," the claim remained available even if it wasn't raised explicitly:

> The "theory of the pleadings" doctrine, under which a plaintiff must succeed on those theories that are pleaded or not at all, has been effectively abolished under the federal rules. … The federal rules, and the decisions construing them, evince a belief that when a party has a valid claim, he should recover on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage, provided that such a shift in the thrust of the case does not work to the prejudice of the opposing party.

*Colonial Refrigerated Transp., Inc. v. Worsham*, 705 F.2d 821, 825 (6th Cir. 1983) (quoting *Ogala Sioux Tribe of Indians v. Andrus*, 603 F.2d 707 (8th Cir.1979)) (cleaned up).

With no suggestion of why this case would be an exception to these well-established precedents, the District Court refused to consider Mr. Wonser's explicit argument that his statute of limitations had not run because Defendants continued to infringe on his First Amendment right to *receive* speech, *Stanley v. Georgia*, 394 U.S. 557, 564 (1969) ("It is now well established that the Constitution protects the right to receive information."), simply "[b]ecause Mr. Wonser does not allege this injury in his Complaint."

But refusing to address a viable theory for relief simply because it isn't explicitly raised in the complaint is exactly what this Court and the Supreme Court have explicitly prohibited.

True, the complaint never uses the phrase "right to receive speech," but it indisputably "informed the city of the factual basis" for pressing that theory:

- It complains that because Defendants' rules give no notice of what is prohibited, Mr. Wonser has been unable to receive speech from 21 different, specifically alleged drivers. Complaint, ¶¶ 39–60.

- It complains that because Defendants' rules are unconstitutionally arbitrary, Mr. Wonser has been unable to receive speech from 19 different, specifically alleged drivers. Complaint, ¶¶ 62–69.

- It complains that because Defendants are unconstitutionally discriminating against specific viewpoints he wishes to hear, Mr. Wonser has been unable to receive speech from 10 different, specifically alleged drivers. Complaint, ¶¶ 73–79.

- The complaint likewise ropes in Defendants' censorship of other drivers whose messages Mr. Wonser seeks to receive by alleging the "substantial amount" of protected speech they prohibit, Complaint, ¶ 125, which could not be the case if Mr. Wonser were talking only about a single license plate he wanted for himself.

And beyond the factual allegations, the Complaint put Defendants on notice of a right-to-receive theory because it its prayer for relief went beyond "ordering Defendants to process and approve Mr. Wonser's application" to also demand an order "barring Defendants from enforcing the Special Plate Screening Guidelines" against *any* driver.[25]

Because the Complaint contained either direct or inferential allegations with respect to all the material elements of a right-to-receive claim, the district court erred in granting Defendants' motion for judgment on the pleadings.

## Conclusion

The district court's disposal of Mr. Wonser's complaint on statute-of-limitations grounds rested on a series of errors, both in how it interpreted his allegations and how it interpreted the

---

[25] Complaint, ECF #1, PageID #17.

controlling law. The Court should reverse and remand for a full consideration of the case on its merits.

Respectfully submitted,

*/s/Brian D. Bardwell*
Brian D. Bardwell (0098423)
Speech Law, LLC
4403 Saint Clair Ave, Suite 400
Cleveland, OH 44103-1125
216-912-2195 Phone/Fax
brian.bardwell@speech.law
*Attorney for Appellant Jeffrey Wonser*

### CERTIFICATE OF COMPLIANCE

This document contains **Error! No document variable supplied.** words and therefore complies with Fed. R. App. P. 32's type-volume limitation of no more than 13,000 words.

### CERTIFICATE OF SERVICE

I certify that on November 7, 2025, this document was served on opposing counsel as provided by Fed. R. Civ. P. 5(b)(2)(E).

*/s/Brian D. Bardwell*
Brian D. Bardwell (0098423)
*Attorney for Appellant Jeffrey Wonser*

### ADDENDUM

| ECF | Description | PageID |
|---|---|---|
| 1 | Complaint | 1 |
| 4 | Answer | 39 |
| 9 | Motion for Judgment on the Pleadings | 57 |
| 23 | Reply in Support of Motion for a Preliminary Injunction | 2404 |
| 24 | Brief in Opposition to Motion for Judgment on the Pleadings | 2424 |
| 38 | Order granting Motion for Judgment on the Pleadings | 2489 |
| 40 | Notice of Appeal | 2498 |