IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| **JEFFREY WONSER,**<br><br>                    *Appellant,*<br><br>       v.<br><br>**CHARLES L. NORMAN,** *et al.*,<br><br>                    *Appellees.* | Case No.: 25-3509 |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
JUDGE SARAH D. MORRISON, DISTRICT JUDGE
NO. 2:24-CV-02160

**REPLY BRIEF OF APPELLANT JEFFREY WONSER**

Brian D. Bardwell (0098423)
Speech Law, LLC
4403 Saint Clair Ave, Suite 400
Cleveland, OH 44103-1125
216-912-2195 Phone/Fax
brian.bardwell@speech.law
*Attorney for Appellant Jeffrey Wonser*

TABLE OF CONTENTS

Table of Authorities ................................................................................ iii

Summary of Argument ............................................................................ 1

Law & Argument ..................................................................................... 2

    I.   Because Defendants cannot explain why they are exempt from the default separate-accrual rule, the Court should hold that Mr. Wonser timely raised his claim from April 2024. ............................................................... 2

    II.  Because it was a separate violation of the First Amendment and inflicted a separate injury, the rejection of his April 2024 application permits Mr. Wonser adequately alleged a continuing violation of his First Amendment right to free speech .......................................................................... 9

    III. The remainder of Defendants' arguments do nothing to excuse the error in dismissing Mr. Wonser's claims. ................................................... 17

Conclusion ............................................................................................. 18

Certificate of Compliance ..................................................................... 19

Certificate of Service ............................................................................. 19

# TABLE OF AUTHORITIES

## Cases

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed.Cir.1992).....3

*Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096 (2d Cir. 1988) .......................................3

*Brown v. Yost*, 133 F.4th 725 (6th Cir. 2025)........................................................11

*Carman v. Yellen*, 112 F.4th 386 (6th Cir. 2024) ...................................................17

*CBS, Inc. v. Davis*, 510 U.S. 1315 (1994) .............................................................11

*Cellar Door Prods., Inc. of Michigan v. Kay*, 897 F.2d 1375 (6th Cir. 1990) .........2

*Comm'r v. Sunnen*, 333 U.S. 591 (1948)................................................................2

*Fauconier v. Clarke*, 966 F.3d 265 (4th Cir. 2020) ...............................................15

*Flynt v. Shimazu*, 940 F.3d 457 (9th Cir. 2019).....................................................3

*Gabelli v. S.E.C.*, 568 U.S. 442 (2013) .................................................................12

*Gamble v. Greater Cleveland Reg'l Transit Auth.*, No. 1:17-CV-389, 2017 WL
    2634482 (N.D. Ohio June 19, 2017)...................................................................15

*Gandy v. Sullivan Cnty.*, 24 F.3d 861 (6th Cir. 1994) .........................................3, 6

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968).................14

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)..........................................9

*Heard v. Sheahan*, 253 F.3d 316 (7th Cir. 2001)................................................3, 16

*Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731 (5th
    Cir. 2017) ...........................................................................................................16

*Heid v. Warden*, No. 23-3367, 2024 WL 1212829 (6th Cir. Mar. 21, 2024)...........6

*Herrera v. City of Espanola*, 32 F.4th 980 (10th Cir. 2022) ..............................3, 16

*Knight v. Columbus, Ga.*, 19 F.3d 579 (11th Cir. 1994) .........................................3

*KPNX Broad. Co. v. Arizona Superior Ct.*, 459 U.S. 1302 (1982) .......................11

*Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516 (6th Cir. 1997)....................14

*Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322 (1955)........................................4

*Lever v. Nw. Univ.*, 979 F.2d 552 (7th Cir. 1992) .................................................15

*Muniz-Cabrero v. Ruiz*, 23 F.3d 607 (1st Cir. 1994).............................................3

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)................................3

*Nebraska Press Assn. v. Stuart*, 427 U.S. 539 (1976) ...........................................11

*New York Times Co. v. Jascalevich*, 439 U.S. 1317 (1978) ...................................11

*Palmer v. Bd. of Educ. of Cmty. Unit Sch. Dist. 201-U, Will Cnty., Ill.*, 46 F.3d 682
    (7th Cir. 1995)......................................................................................................3

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014) ...........................2, 6

*Pittman v. Spectrum Health Sys.*, 612 F. App'x 810 (6th Cir. 2015) ......................13

*Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219 (6th Cir. 1996) ...............11

*Rasawehr v. Grey*, No. 24-3322, 2025 WL 1639164 (6th Cir. June 10, 2025).........4

*Thigpen v. Bibb Cnty., Ga., Sheriff's Dep't.*, 223 F.3d 1231 (11th Cir. 2000) .........3

*Thigpen v. Bibb Cnty., Ga., Sheriff's Dep't.*, 223 F.3d 1231 (11th Cir. 2000) ..........3

*Webb v. Indiana Nat. Bank*, 931 F.2d 434 (7th Cir. 1991).......................................15

**Statutes**

42 U.S.C. § 1983 .............................................................................. 1, 3, 16

**SUMMARY OF ARGUMENT**

The parties now agree on most key points:

- In Ohio, the default statute of limitations for claims under 42 U.S.C. § 1983 is two years. Appellee's Brief, 6–8.
- Mr. Wonser alleged an April 2024 deprivation of his constitutional rights. Appellee's Brief, 3.
- Mr. Wonser filed his complaint making that allegation in May 2024—just 10 days after the alleged deprivation. Appellee's Brief, 4.
- Mr. Wonser's claim based on the April 2024 deprivation is therefore timely—unless it is precluded by his failure to litigate over similar actions taken outside the limitations period.

On that final question, Defendants do not meaningfully dispute any of the facts that support Mr. Wonser's argument, nor do they meaningfully dispute the existence of controlling precedent permitting plaintiffs like Mr. Wonser to proceed on facts like those alleged here. Instead, they repeatedly conclude that those rules do not apply to Mr. Wonser, but again, they do not meaningfully offer any explanation why, instead inviting the Court to treat this case as special or different for some unexplained reason.

All those arguments are distractions from the one key, undisputed fact: Mr. Wonser filed a lawsuit alleging a deprivation of his constitutional rights only 10 days after the deprivation occurred. Under any normal application of the law, there can be no dispute that—even if there are other deprivations too old to be litigated—he is entitled to proceed at least on that claim.

LAW & ARGUMENT

**I.     Because Defendants cannot explain why they are exempt from the default separate-accrual rule, the Court should hold that Mr. Wonser timely raised his claim from April 2024.**

Under the separate-accrual rule, "[w]hen a defendant commits successive violations, the statute of limitations runs separately from each violation. Each wrong gives rise to a discrete claim that accrues at the time the wrong occurs. In short, each infringing act starts a new limitations period." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014).

Defendants do not dispute that the separate-accrual rule exists, that Mr. Wonser alleged a successive violation, or that applying it here would require reversal; they merely argue that the separate-accrual rule "does not apply here" because "*Petrella* involved the Copyright Act." Appellee's Brief, 9. Mr. Wonser of course concedes that *Petrella* involved the Copyright Act, but because its discussion of the separate-accrual rule was merely a routine application of federal common law—that separate violations of a party's rights give rise to separate claims for relief—it is unclear how that distinction makes any difference.

Is the Copyright Act unique among all laws in using the separate-accrual rule? It is not.[1] Is the separate-accrual rule somehow unsuitable in civil-rights

---

[1] *See, e.g.*, *Comm'r v. Sunnen*, 333 U.S. 591, 598 (1948) (in tax cases, "[e]ach year is the origin of a new liability and of a separate cause of action."); *Cellar Door Prods., Inc. of Michigan v. Kay*, 897 F.2d 1375, 1377 (6th Cir. 1990) (in antitrust cases, "a cause of action accrues to the plaintiff each time the defendant engages in

cases? It is not.[2] Is Section 1983 specifically somehow exempt from the separate-accrual rule? It is not.[3]

So what, exactly, is the argument here? Defendants never say; like the district court's decision, they simply conclude that having wronged Mr. Wonser

---

antitrust conduct that harms the plaintiff"); *Knight v. Columbus, Ga.*, 19 F.3d 579, 582 (11th Cir. 1994) (in FLSA cases, "each violation gives rise to a new cause of action"); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1031 (Fed.Cir.1992) (applying separate-accrual to patent cases); *Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1105 (2d Cir. 1988) ("[C]ivil RICO actions are subject to a rule of separate accrual.").

[2] *See, e.g., Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (in Title VII racial-discrimination cases, "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"); *Gandy v. Sullivan Cnty.*, 24 F.3d 861, 865 (6th Cir. 1994) (in Equal Pay Act cases, "a new cause of action accrued each time the defendant violated the law").

[3] *See, e.g., Herrera v. City of Espanola*, 32 F.4th 980, 995 (10th Cir. 2022) ("[U]nder the repeated violation doctrine, each new violation restarts the statute of limitations"); *Flynt v. Shimazu*, 940 F.3d 457, 462 (9th Cir. 2019) ("When the continued enforcement of a statute inflicts a continuing or repeated harm, a new claim arises (and a new limitations period commences) with each new injury."); *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001) ("A series of wrongful acts creates a series of claims."); *Thigpen v. Bibb Cnty., Ga., Sheriff's Dep't.*, 223 F.3d 1231, 1244 (11th Cir. 2000) ("[A]lthough the Reeves Decree, like the classification scheme at issue in *Knight*, is a constant, it gives rise to discrete violations, each triggering its own statute of limitations period."); *Palmer v. Bd. of Educ. of Cmty. Unit Sch. Dist. 201-U, Will Cnty., Ill.*, 46 F.3d 682, 686 (7th Cir. 1995) ("[W]hen there is only one wrongful act the claim accrues with the first injury. … A series of wrongful acts, however, creates a series of claims."); *Muniz-Cabrero v. Ruiz*, 23 F.3d 607, 610 (1st Cir. 1994) ("Serial violations are composed of a number of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate actionable wrong. … Plaintiff bears the burden of demonstrating that at least one discriminatory act occurred within the limitations period.").

once without being sued, they are free to continue violating his rights in perpetuity, as long as they keep doing it in basically the same way. Of course, the state would never endorse this argument in any other setting: If the Highway Patrol cited him for speeding down Interstate 71, Mr. Wonser could not secure a dismissal by proving that he did the exact same thing 10 years earlier. If the state sued him for unpaid taxes, the state would not throw up its hands and walk away if Mr. Wonser proved he had also failed to pay taxes after working his first summer job in high school.

Why, then, would the state be entitled to some inequitable inversion of normal statute-of-limitations law that "would in effect confer on them a partial immunity from civil liability for future violations"? *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 329 (1955).

Its argument rests on a pair of unpublished, factually inapposite decisions that purportedly "reinforce" their analysis, but in truth support Mr. Wonser—if they are relevant at all. In the first case, *Rasawehr v. Grey*, No. 24-3322, 2025 WL 1639164 (6th Cir. June 10, 2025), a local gadfly sued the sheriff for violating his First Amendment rights by issuing him a cease-and-desist letter ordering him to stop contacting the sheriff's office and again by charging him with obstructing official business by continuing that contact. The district court held—and this Court

affirmed—that both claims were time-barred, as both the letter and the criminal charges were more than two years old when he first filed suit.

Defendants believe *Rasawehr* is "particularly applicable" because this Court found that the statute of limitations began with the receipt of the cease-and-desist letter, barring all claims in the complaint. Appellees' Brief, 8. But that was not how the Court analyzed the case at all. It acknowledged that the plaintiff was raising separate claims based on separate events, and it therefore calculated the separate statutes of limitations for each claim, based on the *separate accrual* of each claim.

If anything, then, *Rasawehr* cuts in Mr. Wonser's favor, as it shows that although the sheriff's initial violation of the plaintiff's rights (by interfering with his right to speak to and criticize the sheriff's office) resulted in the full accrual of a claim for deprivation of rights under the First Amendment, the subsequent violation of the plaintiff's rights (also by interfering with his right to speak to and criticize the sheriff's office) resulted in the *separate accrual* of a separate claim for deprivation of rights under the First Amendment. This Court never said Mr. Rasawehr was barred from recovery on the second violation because his delay in addressing the first violation entitled the sheriff to harass him in perpetuity; it said

he was barred from recovery on the second violation because his delay in addressing *that claim* was more than two years.[4]

That is not the case here, as there is no dispute that Mr. Wonser alleges a violation of his rights in April 2024, days before he first filed suit. The question is only whether it gave rise to a separate accrual that would allow him through the courthouse doors. As laid out above, the general rule is that separate violations give rise to separate accruals—even when the violations are identical, as in the case of separately accruing claims based on identical paychecks, *Gandy*, 24 F.3d at 865, separately accruing claims based on identical copies of Raging Bull, *Petrella*, 572 U.S. at 671, or separately accruing claims based on identical infringements of Mr. Wonser's First Amendment right to free speech.

Unable to find supportive law from any case that is factually on point, Defendants instead harp on the theoretical importance of statutes of limitations. Mr. Wonser concedes the point but notes again that Defendants' arguments

---

[4] Their second case, *Heid v. Warden*, No. 23-3367, 2024 WL 1212829 (6th Cir. Mar. 21, 2024), reinforces Mr. Wonser's argument because it followed the same pattern as *Rasawehr*: prison repeatedly violated prisoner's First Amendment rights in the same way, but prisoner didn't file suit until more than two years after the last instance, resulting in dismissal. If there were not a second statute-of-limitations clock running on the second administrative decision, the court would have asked only whether the prisoner had sued more two years after the first, rather than whether he sued "more than two years after each of the relevant final administrative decisions."

actually cut in his own favor. If the idea is to avoid cases where "evidence has been lost," "memories have faded," or "witnesses have disappeared," Appellees' Brief, 6–7, Mr. Wonser must ask: what evidence was lost between the April 2024 rejection of his application and the May 2024 filing of his case? What memories faded in those 10 days? What witnesses disappeared? Indeed, despite repeatedly invoking this argument, Defendants have never once suggested that it actually has any relevance to this case.

On the contrary, the facts of this case help illustrate why it was error to treat both denials as the same deprivation of rights. For instance, Mr. Wonser brought individual-capacity claims based on those violations against *different defendants*. Whatever claims Mr. Wonser may have had because of Defendant Stickrath's conduct in March 2022 violation, there is no way that failing to timely litigate them can bar Mr. Wonser from suing if Defendant Wilson subsequently violates his rights.

Further, even if it were true that the failure to litigate a March 2022 deprivation of rights precludes litigating an April 2024 deprivation of rights, granting judgment on the pleadings on those grounds requires the Court to construe the pleadings in Defendants' favor by assuming that the March 2022 denial was, in

fact, a deprivation of Mr. Wonser's rights.[5] An alternative plausible inference to be

drawn from the pleadings is that the March 2022 denial did not give rise to a First

Amendment claim at all, while the April 2024 denial did:

- perhaps because Defendant Stickrath had a permissible reason for the first denial while Defendant Norman did not;
- perhaps because Mr. Wonser had finally suffered sufficient injury to confer standing;[6]
- perhaps because the law had become sufficiently clearly established to overcome a qualified-immunity defense;[7] or
- perhaps because Mr. Wonser's message had taken on sufficient "objective meaning" to fall within the First Amendment's protection.[8]

In any of those cases, Mr. Wonser would not have had any claim to raise

based on the earlier denial and therefore cannot be time-barred from litigating the

later denial.

But even setting aside the many unresolved factual questions as to whether

Mr. Wonser suffered a "new" deprivation of his rights within the two-year

---

[5] Defendants drop a brief footnote attempting to justify the district court's reliance on materials outside the pleadings in deciding the motion for judgment on the pleadings, but its arguments are equally unavailing, for three reasons: (1) there is no exception allowing the consideration of materials a plaintiff has submitted in other filings; (2) even if there were, Defendants have not identified materials supporting the vast majority of the district court's unfavorable inferences; and (3) Defendants have not established that any of the materials they do point are public records and therefore subject to judicial notice.

[6] Answer, ECF #4, ¶ 161, PageID 36.

[7] Answer, ECF #4, ¶ 163, PageID 37.

[8] Answer, ECF #4, ¶ 163, PageID 37.

window, affirming the district court's judgment on those grounds requires the

Court to ignore the massive body of law saying that each new violation gives rise

to a new claim with a new limitations period anyway. Because Defendants have no

explanation why this law does not apply to them, the Court should hold that Mr.

Wonser timely raised his claim for the April 2024 deprivation of his rights.

## II.    Because it was a separate violation of the First Amendment and inflicted a separate injury, the rejection of his April 2024 application permits Mr. Wonser adequately alleged a continuing violation of his First Amendment right to free speech.

The parties—and the district court—appear to agree that a plaintiff may

demonstrate a continuing violation by establishing three facts:

1. the defendants engage in continuing wrongful conduct;
2. injury to the plaintiffs accrues continuously; and
3. had the defendants at any time ceased their wrongful conduct, further injury would have been avoided.[9]

A plaintiff injured by the practice may pursue a continuing-violation claim,

even if he himself was not the immediate victim of it within the statute of

limitations. *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ("Where the

challenged violation is a continuing one, the staleness concern disappears. … [T]he

complaint is timely when it is filed within [the limitations period] of the last

asserted occurrence of that practice.").

---

[9] *Compare*, Reply in Support of Mot. for Prelim. Inj., ECF #23, PageID 2406; *with* Appellees' Brief, 10; *with* Opinion, ECF #38, PageID #5.

There appears to be no dispute that Mr. Wonser has satisfied the first and third elements of the continuing-violation test: He alleged that Defendants have been enforcing the Guidelines in violation of drivers' First Amendment rights, dating back to the settlement of a similar case in 2001 and continuing to "now."[10] And he alleges that Defendants could have avoided further injuring him if they had ceased their wrongful conduct because he attempted to apply again for a license plate but was blocked only by Defendants' continued enforcement of the Guidelines.[11]

The dispute instead seems to center on the second element—whether Mr. Wonser's allegation of injuries from ongoing enforcement of the Guidelines amounts to "a new deprivation of constitutional rights every day" or "merely suffering additional harm from a prior unconstitutional act."[12] Answering this question should be fairly straightforward, as this Court and the Supreme Court have both acknowledged that First Amendment violations arising from the government's refusal to let a plaintiff disseminate his speech give rise to continuously accruing injuries, because "each passing day" that he cannot disseminate his message is "a separate and cognizable infringement of the First

---

[10] Complaint, ECF #1, ¶¶ 32–34.

[11] Complaint, ECF #1, ¶¶ 111–16.

[12] Opinion, ECF #38, PageID #2493.

Amendment." *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 224 (6th Cir. 1996) (quoting *Nebraska Press Assn. v. Stuart*, 427 U.S. 539 (1976)).[13]

Nonetheless, the Court flatly concluded that restraining Mr. Wonser from speaking his message suffered an injury on Day 1, but never again. There was "no new constitutional deprivation" on Day 2 or Day 3—or even on Day 761, when Mr. Wonser submitted an application two years later to a new director of the Ohio Department of Public Safety—because "he knew or should have known at that time that his First Amendment rights had been violated" and his "subsequent requests … were not new deprivations."[14] But the district court never explained how it reached those conclusions, how it squares them with its later conclusion that each "denial of a requested license plate is … independently actionable," or how it distinguishes this case from *Procter and Gamble*, *Nebraska Press Ass'n..*, or any of the other cases that treat First Amendment violations as inflicting fresh injuries with each day they continue.

The only justification for those discrepancies was the district court's conclusion that accepting them would ensure its decision "aligns with the purpose

---

[13] *Accord*, *CBS, Inc. v. Davis*, 510 U.S. 1315, 1317 (1994); *KPNX Broad. Co. v. Arizona Superior Ct.*, 459 U.S. 1302, 1305 (1982); *New York Times Co. v. Jascalevich*, 439 U.S. 1317, 1321 (1978); *Brown v. Yost*, 133 F.4th 725, 738 (6th Cir. 2025) ("Plaintiffs face irreparable, First Amendment harm with each day the stay remains in place.").

[14] Opinion, ECF #38, PageID #2494.

of the statute of limitations," as any other conclusion would subject Defendants to suit "from anyone whose license plate had been rejected since the enactment of the guidelines in 2003," which it said would be "untenable."

Would it, though? What is untenable about requiring Defendant Wilson to answer for a decades-old policy that has been unconstitutional for decades but that he enforced against Mr. Wonser just days earlier? While it will sometimes be true that "evidence has been lost, memories have faded, and witnesses have disappeared," *Gabelli v. S.E.C.*, 568 U.S. 442, 448 (2013), when litigating a discrete, years-old act of discrimination, the same is not true in continuing-violation cases like this one: evidence remains available because Defendants are still generating it through their continued enforcement of the Guidelines, memories remain fresh because their employees are still violating the law every day, and witnesses have not disappeared because the defendant continues to employ them specifically for the purpose of enforcing its unconstitutional policies. The statute of limitations may be meant to "provide security and stability to human affairs," *Gabelli*, 568 U.S. at 448, but it is not meant to provide security and stability to brazen illegality simply because it wasn't litigated in the first two years.

So if Mr. Wonser's case satisfies each of the three elements for a continuing-violation case, if binding precedent already recognizes his injuries as continuously accruing, and the Supreme Court has already rejected the district court's policy-

based rationale for granting Defendants an exemption from the rules, what basis remains for denying Mr. Wonser the option of relying on a continuing-violation theory? Though the court never explicitly ties them into its analysis, its opinion does cite two cases that, on their face, appear to lend it some support.

The first is this Court's unpublished, nonbinding decision in *Pittman v. Spectrum Health Sys.*, 612 F. App'x 810 (6th Cir. 2015), where a group of home-health aides sued their employer for accommodating a client's request that the company stop sending them to his home because they were back. The district court dismissed their claims, and this Court affirmed, holding that although the discriminatory practice was still ongoing, the only events that had occurred within the limitations period were merely the "delayed, but inevitable consequence[s]" of the initial discriminatory act; they therefore could not invoke the continuing-violations doctrine "because they have not alleged they have suffered a specific discriminatory act within the … limitations period":

> We have been clear that an employer's failure to rectify a prior discriminatory act is not sufficient to meet the standard for invoking the continuing-violations doctrine. [T]he continuing-violations doctrine [is] not triggered by an employer's denial of its employees' repeated requests for further relief from a prior act of discrimination.

*Pittman v. Spectrum Health Sys.*, 612 F. App'x 810, 813 (6th Cir. 2015) (cleaned up).

*Pittman*'s discrete act/delayed consequences dichotomy appears to be at odds with controlling precedent, as enforcing it would have changed the outcome in *Hanover Corp.*, which involved continued enforcement of the defendant's decades-old policy of leasing rather than selling machinery to its customers.[15] The better reading is instead that the key consideration is not the existence of continuing discrete acts directed against the plaintiff, but "continuing and accumulating harm" flowing from "conduct which constituted a continuing violation of the [law]." *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 502 (1968).

But even accepting *Pittman* as a correct application of the continuing-violation doctrine, Mr. Wonser's case can help to illustrate what *Pittman* called "the subtle difference between a continuing violation and a continuing effect of a prior violation," as his Complaint alleges both. Mr. Wonser submitted his application for a license plate, but Defendants rejected it for discriminatory reasons. If Mr. Wonser let that claim go stale, sending a letter complaining about the rejection likely would not resurrect it, as it would be a "delayed but inevitable" consequence of the first rejection. But if Defendants invited Mr. Wonser to apply

---

[15] Because "Geauga did not commit any invalid acts … after it enacted the resolution," *Pittman*'s rule would have likewise changed the outcome in *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997).

for the same license plate again, only to reject him for the same discriminatory reasons, his failure to litigate the first rejection cannot preclude him from litigating the second, independently actionable rejection. Defendants treat this as some bizarre anomaly, but replace "license plate" with "job" and Mr. Wonser's position becomes almost too obviously correct to debate. *See*, *e.g.*, *Fauconier v. Clarke*, 966 F.3d 265, 274 (4th Cir. 2020) ("[W]e consider Fauconier's limitations arguments in light of the VDOC's last refusal to hire him."); *Lever v. Nw. Univ.*, 979 F.2d 552, 556 (7th Cir. 1992) ("An applicant does not have to sue about the first wrong to be entitled to contest a second."); *Webb v. Indiana Nat. Bank*, 931 F.2d 434, 437 (7th Cir. 1991) ("A defendant cannot by virtue of its history of discrimination against an employee prevent that employee from complaining about new discriminatory acts."); *Gamble v. Greater Cleveland Reg'l Transit Auth.*, No. 1:17-CV-389, 2017 WL 2634482, at *3 (N.D. Ohio June 19, 2017) ("Gamble has the right to make sequential ADA claims, so long as his retaliation allegations relate to new conduct by GCRTA. Filing a retaliation claim with the EEOC in 2013 does not preclude Gamble from filing future retaliation claims.").[16]

---

[16] *Webb* and *Lever* do include dicta indicating that the first rejection would trigger the statute of limitations if the employer had notified the applicants that future applications would not be considered. But such considerations are irrelevant here, as Defendants explicitly invited Mr. Wonser to reapply with evidence that his message had a different meaning. Complaint, ECF #1, ¶ 99.

So even if a claim regarding his March 2022 application is untimely, and even if his letter asking to reverse the original decision on the original application could not revive it, Defendants invited him to apply again in the future, and he therefore could not have been on notice that he needed to litigate until they rejected an entirely new application with no such qualifications in March 2024.[17]

Mr. Wonser therefore alleged not only an injury continuing to accrue into the limitations period, but also a discrete act constituting a new deprivation within the limitations period. He has therefore established a continuing violation permitting his claims to go forward, whether the argument is analyzed under either the Supreme Court's rule in *Havens Realty* or the Sixth Circuit's narrower, unpublished formulation in *Pittman*.

---

[17] The district court and Appellees have also suggested that judges should perhaps put a thumb on defendants' side of the scale when plaintiffs invoke the continuing-violation doctrine in Section 1983 case, where it could "rarely" apply. Opinion, ECF #38, PageID #2493; Appellees' Brief, 11. Neither, however, explains why that would be, except to point to unpublished dicta, which is similarly bereft of any rationale for discriminating against Section 1983 plaintiffs. In truth, the continuing-violation doctrine is simply another piece of federal common law, applicable to Section 1983 claim the same as any other federal claim. *Herrera v. City of Espanola*, 32 F.4th 980, 994 (10th Cir. 2022) ("[T]he continuing violation doctrine, as a general principle of the federal common law, is available to a § 1983 litigant"); *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 739 (5th Cir. 2017) ("The continuing violation doctrine applies the same to Title VII hostile work environment claims as it does to such claims brought under section 1983."); *Heard v. Sheahan*, 253 F.3d 316, 320 (7th Cir. 2001) ("Numerous cases assume that a federal doctrine of continuing wrongs is indeed applicable to suits under 42 U.S.C. § 1983. … We agree.").

## III.   The remainder of Defendants' arguments do nothing to excuse the error in dismissing Mr. Wonser's claims.

Defendants' brief closes with a pair of arguments for affirming the district court's decision by purporting to knock down Mr. Wonser's "representational standing" argument and his "notice arguments."

These sections are a bit of a hash, but the Court need not dwell too long on them, as they consist primarily of *non sequiturs* and fallacies:

- Mr. Wonser has never argued that his complaint permits him to assert representational standing. He therefore concedes that he is not entitled to representational standing as the case stands now.

- Defendants' response to *Havens Realty* is pure circular logic: Its continuing-violations doctrine can't apply to Mr. Wonser's claims, they argue, because that argument "is based upon the incorrect premise that the continuing violations doctrine applies to his claims." Appellee's Brief, 13. But that is the *conclusion* of Mr. Wonser's argument, not its premise; the *premises* can be found in the preceding four pages of argument laying out the factual similarities between his case and *Havens Realty*[18]—none of which Defendants address.

- Mr. Wonser has never argued that his complaint permits him to litigate a class action. He therefore concedes that this case is currently poorly suited for a class action—"pseudo" or otherwise.

- Any argument that Mr. Wonser lacks standing because he has no valid constitutional claim is wrong as a matter of law. *Carman v. Yellen*, 112 F.4th 386, 399 (6th Cir. 2024) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal.").

---

[18] Appellant's Brief, 13–16.

- Defendants' argument that Mr. Wonser cannot rely on the "theory of the pleadings" is irrelevant, as Mr. Wonser repeatedly argues that the district court *erred* by enforcing it. Appellant's brief, 1, 6, 18–19.

- Defendants' argument that Mr. Wonser's allegations of other drivers whose messages he has been unable to receive consist of nothing beyond "naked assertions devoid of further factual enhancement" is bad-faith defense boilerplate. As Mr. Wonser's brief notes, the Complaint specifically identified 50 other rejected messages that he seeks to receive, specifically alleged an additional "substantial amount" of other censored speech, and specifically asked to prevent the enforcement of the Guidelines against drivers other than Mr. Wonser. Because it never addresses any of these facts, Defendants' own argument therefore amounts to nothing more than a naked assertion devoid of further factual enhancement.

## CONCLUSION

Mr. Wonser's timely filed his claims, and neither the district court nor Defendants has been able to support their conclusions to the contrary. The Court should reverse the district court's decision granting Defendants judgment on the pleadings and remand for further proceedings.

Respectfully submitted,

*/s/Brian D. Bardwell*...........................
Brian D. Bardwell (0098423)
Speech Law, LLC
4403 Saint Clair Ave, Suite 400
Cleveland, OH 44103-1125
216-912-2195 Phone/Fax
brian.bardwell@speech.law
*Attorney for Appellant Jeffrey Wonser*

**CERTIFICATE OF COMPLIANCE**

This document contains 5,315 words and therefore complies with Fed. R.

App. P. 32's type-volume limitation of no more than 6,500 words.

**CERTIFICATE OF SERVICE**

I certify that on January 20, 2026, this document was served on opposing

counsel as provided by Fed. R. Civ. P. 5(b)(2)(E).

*/s/Brian D. Bardwell*............................
Brian D. Bardwell (0098423)
*Attorney for Appellant Jeffrey Wonser*